**BELLE CHENEY SPRINGS LAND & DEVELOPMENT CO., Inc., v. BELLE CHENEY SAND & GRAVEL CO., Inc., et al.**

**No. 1533.**

Court of Appeal of Louisiana. First Circuit.
Jan. 28, 1936.

W. C. Perrault, of Opelousas, for appellants.

Lewis & Lewis, of Opelousas, for appellee.

DORE, Judge.

The question involved in this case has reference to the amount of payment that is due as royalty to the landowner on the gravel that is taken therefrom by a lessee to whom the land has been leased.

The contract provided for a payment of 3 cents per cubic yard for all gravel and sand mined *or otherwise developed* on the lands and *actually shipped from the gravel plant* proposed to be erected thereon, *or disposed of or purchased from the plant or on the land.*

As we understand from the record, the standard measurement of gravel known as *sand-washed gravel* is 2,700 pounds per cubic yard; for the other kind of gravel known as pit-run gravel it is 3,000 pounds per cubic yard. The plaintiff contends that it is entitled to 3 cents per cubic yard of 2,700 pounds, whereas the defendants contend that all they have to pay is 3 cents per cubic yard of 3,000 pounds.

According to the schedule attached to the supplemental petition herein filed, there were 213,421,088 pounds, and which amount is admitted according to article 11 of the original petition, and the admittance thereof by the answer. Figuring this upon the basis as averred by the plaintiff amounts to 79,044.84 cubic yards, and, according to the defendants' contention, it amounts to 71,140.37 cubic yards, making a difference in the cubic yards of the sum of 7,904.47 cubic yards, or a difference in money of $237.12.

There is a dispute as to the amount of royalty due on the sand, and it is admitted that the sand runs 3,000 pounds to the cubic yard.

The lower court rendered judgment in favor of the plaintiff, and the defendants have appealed.

It appears to us* that in order to arrive at a proper solution of the question presented, we have to take into consideration the two methods of mining gravel as outlined in the record and discussed in the briefs in this case. One is the steam-shovel method usually used where the gravel bed is in a hill, and it is excavated by means of a steam shovel and loaded for transportation just as it comes from the bed; that is, the rock and sand together. This, we understand it to be known as pit-run gravel and runs 3,000 pounds to the cubic yard in standard weight and measure.

The other method of mining gravel is referred to as the suction-dredge method. This method, we understand, consists in removing the gravel from below the surface of the earth by means of hydraulic pressure. A suction dredge is used with a pipe line through which the gravel is brought to the surface. The gravel and sand come out together, but as it is pumped out of the earth, it passes, in the same operation, through a screen, the small meshes of which first let out the sand, and the gravel then passes through the larger meshes, free of sand. This method is the most economical one to use in location where the sand is below the level surface of the earth as distinguished to other locations where it is found in hills.

The gravel deposit in this case was one below the surface of the earth, varying from nothing to about sixteen feet. It is shown that the method of mining was the suction dredge type, and that it was loaded and shipped as sand-washed gravel, separated from the sand. There cannot be any doubt, therefore, that the standard of weight and measure to be applied is 2,700 pounds to the cubic yard.

The contract provided that the royalty is to be paid for all gravel and sand mined, or otherwise developed, and actually shipped. It is clear that the parties had in mind, at the time of the making of the contract, that the royalty was to be paid on sand-washed gravel, such as was produced from the gravel bed. They evidently were familiar with the terms used in the business; had they meant that the royalty was to be paid as for pit-run gravel, they doubtless would have so expressed themselves.

It appears to us that the screening of the sand and gravel, in the method used, consists pretty much of one operation and cannot be compared to other mining operations in which the refining of ore product or other product is a separate and distinct operation of itself.

The defendants cite us the case of State v. Hobart Iron Co., 143 Minn. 457, 172 N. W. 899, 175 N.W. 100, 176 N.W. 758, decided by the Supreme Court of Minnesota in 1919. The defendants have furnished us with the copy of the entire decision and the facts therein contained. This case, as we understand it, is one dealing with iron ore. We are not at all familiar with the process of mining iron, but from reading the decision, it appears to us that all that was done in that case was a simple washing process of removing either dust or some foreign substance that was of no value. In the case before us, the process was to separate the gravel from the sand; on both of which products the royalty had to be paid. The iron case, can, in our opinion, be better compared to the extraction of oil through an oil well. A certain amount of water comes up with the oil. This water is separated by some process right at the mouth of the well, so that the oil can be pumped into the reservoir free from the water. It cannot be contended that a royalty on oil would also include a royalty on the water that comes with it in the well to make a barrel which is the unit of measurement. Here, we have a different situation altogether, and, under the terms of the contract, if not by the very nature of the thing itself, the royalty was intended on the gravel and the sand separately as they were developed from the earth.

Counsel for defendants also refers us to the case of Wall v. United Gas Public Service Co., 178 La. 908, 152 So. 561; but this case is not an absolute authority on the question to be decided.

Counsel for defendants also contends that plaintiff did not prove its claim, but from the pleadings in the case, particularly article 11 of the petition wherein plaintiff conclusively avers that a full statement of the payments made by the defendants, showing in detail dates and shipment, car numbers, weights, and payments made, and which allegation is admitted by the defendants, save and except that it denies the sum to be due the plaintiff by the defendants; all of which clearly shows that the claim was disputed only on the basis as to what constituted a cubic yard of gravel in this case, and on which the royalty had to be paid. We understand by these pleadings that the amount of gravel on which some royalty is due was taken from the land, but the royalty is not due on so much thereof. In other words, that the royalty is due for so many cubic yards as are made up of 3,000 pounds instead of 2,700 pounds as contended by the plaintiff.

The lower court having determined these issues in favor of the plaintiff, and we being of the opinion that it did not err in its judgment, it is therefore ordered that the judgment herein appealed from be affirmed, at defendants' costs.